UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| GYAN BAHADUR BHUJEL, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CHAD WOLF,[1] Acting Secretary, United ) <br> States Department of Homeland Security, ) <br> et al., ) <br> ) <br> Defendants. ) <br> ) | Civil No. 18-12644-LTS |

ORDER ON DEFENDANTS' MOTION TO DISMISS AND FOR SUMMARY JUDGMENT (DOC. NO. 11) AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DOC. NO. 16)

March 13, 2020

SOROKIN, J.

Gyan Bahadur Bhujel, a citizen of Nepal who has resided in the United States for nearly seventeen years, has sued the United States Citizenship and Immigration Services ("USCIS"), its director, and the Secretary of the United States Department of Homeland Security following the denial of his application for an adjustment of status to that of a lawful permanent resident. Doc. No. 1. Pending before the Court are the defendants' motion to dismiss and for summary judgment, Doc. No. 11, and Bhujel's cross-motion for summary judgment, Doc. No. 16. For the reasons that follow, both motions are ALLOWED in part and DENIED in part.

---

[1] Former Secretary of the United States Department of Homeland Security Kirstjen Nielsen was an original defendant in this action. Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Wolf, the successor to Kevin McAleenan, who was Nielsen's successor. See U.S. Dep't of Homeland Security, Chad F. Wolf, http://www.dhs.gov/person/chad-f-wolf (Nov. 13, 2019) (last visited Mar. 2, 2020); U.S. Dep't of Homeland Security, Message from Acting Secretary Kevin K. McAleenan, http://www.dhs.gov/news/2019/04/10/message-acting-secretary-kevin-k-mcaleenan (Apr. 10, 2019) (last visited Mar. 2, 2020).

I.     BACKGROUND

The pertinent facts are not in dispute.  See generally Doc. No. 10 (noting the filing of the administrative record);[2] Doc. No. 16-3 (reflecting the parties' "Unified Statement of Material Undisputed Facts").  Bhujel was admitted to the United States on April 16, 2003 under a temporary non-agricultural worker nonimmigrant visa.  Doc. No. 16-3 ¶ 2.  The visa expired on December 31, 2003, but Bhujel remained.  Id. ¶¶ 2-3.  Between 2004 and 2015, he continued to live and work in the United States without authorization.  Id. ¶ 4.

Following a devastating "magnitude 7.8 earthquake [that] struck Nepal" on April 25, 2015, and "numerous" severe aftershocks, Nepal was designated for Temporary Protected Status ("TPS") under 8 U.S.C. § 1154a.  Designation of Nepal for Temporary Protected Status, 80 Fed. Reg. 36,346 (June 24, 2015).  Bhujel, a Nepalese citizen, applied for TPS on July 13, 2015.  Doc. No. 16-3 ¶ 5.  On May 1, 2016, with that application still pending, USCIS approved Bhujel for "advanced parole," authorizing him to depart the United States and return between then and December 24, 2016.  Id. ¶ 7; A.R. at 138.[3]  Bhujel then travelled to Nepal to visit his family, departing from Boston on May 16, 2016.  Doc. No. 16-2; Doc. No. 16-3 ¶ 8.  On June 15, 2016, while Bhujel was in Nepal, USCIS granted his application for TPS.  Doc. No. 16-3 ¶ 6; A.R. at 172-73.  He returned and was paroled back into the United States on July 26, 2016.  Doc. No. 16-3 ¶ 9; A.R. at 137.[4]

---

[2] The 442-page administrative record was filed in a bound volume that is in the possession of the Clerk's Office as part of the Court's file.  The Court will cite documents appearing therein by page number as "A.R. at __."

[3] The form memorializing this approval states: "The named bearer of this authorization has been granted Temporary Protected Status . . . ."  A.R. at 138 (emphasis added).  The parties, however, have stipulated that Bhujel's TPS application had not yet been approved at that time.

[4] Bhujel's return is documented in a United States Customs and Border Protection "record of admission," or I-94, maintained on the agency's website.  A.R. at 137.

On January 5, 2017, after USCIS approved his employer's "Immigrant Petition for Alien Worker," Bhujel applied for an adjustment to LPR status. Doc. No. 16-3 ¶¶ 10-11; A.R. at 86, 260-68. His application was denied on October 18, 2017; he sought reconsideration, but on January 10, 2018 USCIS affirmed its denial. Doc. No. 16-3 ¶¶ 12-14; A.R. at 183-84, 243-44. Bhujel reapplied for an adjustment to LPR status in March 2018, but USCIS denied his request on September 10, 2018. Doc. No. 16-3 ¶¶ 15-16; A.R. at 1-4.

Bhujel filed his Complaint in this Court on December 27, 2018, requesting a writ of mandamus and challenging the agency's denials under the Administrative Procedures Act ("APA"). Doc. No. 1. The defendants sought dismissal of the mandamus claim and summary judgment on the APA claim, Doc. No. 11, and Bhujel cross-moved for summary judgment, Doc. No. 16. The motions are fully briefed. No party has requested oral argument.

II.    LEGAL STANDARD

    A.    Dismissal and Summary Judgment

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint "must provide fair notice to the defendants and state a facially plausible legal claim." Ocasio-Hernandez v. Fortuno-Burset, 640 F.3d 1, 12 (1st Cir. 2011). The pleader must "'show' an entitlement to relief" by including in the complaint "enough factual material 'to raise a right to relief above the speculative level'" if the facts alleged are accepted as true. Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 8(a).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a party "has

properly supported its motion for summary judgment, the burden shifts to the non-moving party, who 'may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial.'" Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir. 1995) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)).  The Court is "obliged to review the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor."  LeBlanc v. Great Am. Ins. Co., 6 F.3d 836, 841 (1st Cir. 1993).

Judicial review of whether an agency action was "arbitrary and capricious" under the APA is "narrow, and a court is not to substitute its judgment for that of the agency."  Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co., 463 U.S. 29, 43 (1983).  The courts, however, are "the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent."  Chevron, U.S.A., Inc. v. Nat'l Res. Defense Council, Inc., 467 U.S. 837, 843 n.9 (1984).  If "Congress has directly spoken to the precise question at issue" and "unambiguously expressed [its] intent," both the court and the agency are bound by the plain language Congress chose, and no deference is owed to an agency's contrary interpretation.  Id. at 842-43 & n.9.

B. Statutory Framework

This case concerns the interplay between two sections of the Immigration and Nationality Act ("INA"):  8 U.S.C. § 1254a, governing TPS for noncitizens living in the United States who cannot safely return home to a war-torn or disaster-ridden country," Ramirez v. Brown, 852 F.3d 954, 955 (9th Cir. 2017); and 8 U.S.C. § 1255, governing adjustment to LPR status for certain noncitizens "inspected and admitted or paroled into the United States," § 1255(a).  To resolve a dispute as to the meaning of statutes, the Court first looks to the plain language of the statutes

themselves, which provides the best evidence of what Congress intended.  W. Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98 (1991); accord Medina v. Beers, 65 F. Supp. 3d 419, 426 (E.D. Pa. 2014).

A noncitizen from a country the Attorney General has designated under § 1254a(b) who meets the eligibility requirements enumerated in § 1254a(c) may apply for TPS.  Successful applicants receive, by virtue of their TPS, protection against removal "from the United States during the period in which such status is in effect," and authorization to work in the United States during that time.  § 1254a(a)(1)(A)-(B), (2).  The TPS statute further describes the "[b]enefits and status" accorded successful applicants as follows:

> During a period in which an alien is granted temporary protected status under this section—
>
> (1) the alien shall not be considered to be permanently residing in the United States under color of law;
>
> (2) the alien may be deemed ineligible for public assistance by a State . . . or any political subdivision thereof which furnishes such assistance;
>
> (3) the alien may travel abroad with the prior consent of the Attorney General; and
>
> (4) for purposes of adjustment of status under section 1255 of this title and change of status under section 1258 of this title, the alien shall be considered as being in, and maintaining, lawful status as a nonimmigrant.

§ 1254a(f) (emphasis added).

> The process and conditions governing the adjustment to LPR status are set out in § 1255.
>
> The status of an alien who was inspected and admitted or paroled into the United States . . . may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

§ 1255(a) (emphasis added).

Eight categories of noncitizens are not entitled to discretionary adjustments of status, even if they satisfy § 1255(a)'s requirements. Those categories include:

> <u>subject to subsection (k)</u>, an alien . . . who hereafter continues in or accepts unauthorized employment <u>prior to filing an application for adjustment of status</u> . . . or who has failed (other than through no fault of his own or for technical reasons) to maintain continuously a lawful status <u>since entry into the United States</u>; . . . [and] any alien who was employed while the alien was an unauthorized alien, as defined in section 1324a(h)(3) of this title,[5] or who has otherwise violated the terms of a nonimmigrant visa.

§ 1255(c)(2), (8) (emphasis added). However, a noncitizen seeking an employment-based status adjustment may apply and receive one "notwithstanding subsection (c)(2) . . . and (c)(8)" if:

> (1) the alien, on the date of filing an application for adjustment of status, is present in the United States <u>pursuant to a lawful admission</u>; [and]
>
> (2) the alien, <u>subsequent to such lawful admission</u> has not, for an aggregate period exceeding 180 days—(A) failed to maintain, continuously, a lawful status; (B) engaged in unauthorized employment; or (C) otherwise violated the terms and conditions of the alien's admission.

§ 1255(k) (emphasis added).

> According to the "Definitions" provision of the INA:
>
> (A) The terms "admissions" and "admitted" mean, with respect to an alien, the lawful entry of the alien into the United Sates after inspection and authorization by an immigration officer.
>
> (B) An alien who is paroled under section 1182(d)(5) of this title . . . shall not be considered to have been admitted.

§ 1101(a)(13).

---

[5] "[T]he term 'unauthorized alien' means, with respect to the employment of an alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney General." 8 U.S.C. § 1324a(h)(3).

III.   DISCUSSION

    A.   APA Claim

The defendants seek summary judgment on Bhujel's APA claim—and USCIS denied his applications for LPR status—by urging that his one and only "admission" into the United States occurred in 2003, when he first arrived here on a temporary worker visa. According to the defendants, Bhujel's accrual of far more than 180 days of unauthorized presence and employment in the United States after the expiration of his 2003 visa renders him ineligible for an adjustment of status under § 1255. Bhujel disagrees, arguing his receipt of TPS in June 2016 and/or his parole into the United States in July 2016 after his authorized trip to Nepal constituted a new "admission" or "admissions" for purposes of § 1255. According to Bhujel, he remains eligible for an adjustment of status because he has maintained a lawful status and engaged in only authorized employment since being granted TPS.

The plain language of § 1255(a) provides that a noncitizen seeking LPR status thereunder must have been "inspected and admitted or paroled into the United States," must "make[] an application for such adjustment," must be both "eligible to receive an immigrant visa" and "admissible to the United States for permanent residence," and must have "an immigrant visa . . . immediately available to him at the time his application is filed." The parties agree that Bhujel satisfies these prerequisites, a stipulation which distinguishes this case from nearly all prior decisions the parties cite involving questions of the interaction between the TPS statute and § 1255. E.g., Flores v. U.S. Citizenship & Immigration Servs., 718 F.3d 548, 551 (6th Cir. 2013) (involving a plaintiff who had entered the United States without inspection, and reflecting the dispute at issue centered on the plaintiff's ability to satisfy the "inspected and admitted" and "admissible" requirements of § 1255(a)). There is no dispute that Bhujel was inspected and

admitted in 2003 when he entered the United States pursuant to a valid visa, he applied for an adjustment to LPR, he is eligible to receive a visa and is admissible for permanent residence, and there is an immigrant visa available to him.

The plain language of § 1255(c) provides that certain categories of noncitizens are barred from seeking LPR status, notwithstanding their ability to satisfy the requirements of § 1255(a). Those categories encompass a noncitizen who has worked without authorization before filing an application for status adjustment, or who has not continuously maintained a lawful immigration status since entering the United States. § 1255(c)(2). They also include a noncitizen who "was employed while the alien was an unauthorized alien . . . or who has otherwise violated the terms of a nonimmigrant visa." § 1255(c)(8). The parties agree that Bhujel falls within these statutory provisions—that is, he accepted and maintained unauthorized work before filing his LPR application, and he did not continuously maintain lawful status after his 2003 visa expired. These facts render him ineligible for LPR status, unless he falls within a statutory exception to the § 1255(c) bars.

The exception at issue here appears in § 1255(k). Congress expressly provided that the relevant statutory bars in § 1255(c) are "subject to" subsection (k). § 1255(c)(2). The plain language of § 1255(k) provides that "notwithstanding" the bars applicable to Bhujel, a noncitizen may seek and obtain LPR status if he "is present in the United States pursuant to a lawful admission," and if he has not accumulated more than 180 days of unauthorized employment or unlawful status since "such lawful admission." § 1255(k)(1)-(2). The parties agree that Bhujel amassed more than a decade's worth of days of unauthorized employment and unlawful status between the expiration of his 2003 visa and his grant of TPS in 2016. So, if the defendants are correct and the 180 days provided in § 1255(k) is measured from Bhujel's 2003 admission, he is

ineligible for LPR status and the denials by USCIS of his applications were appropriate. Bhujel, however, urges that the "lawful admission" from which § 1255(k)'s 180-day period is properly measured is the date on which he was granted TPS (or, alternatively, the date a month afterward when he was paroled into the United States following his trip to Nepal). If Bhujel is correct, then he has not accumulated a single day of unauthorized work or unlawful status, and the agency's findings of ineligibility were contrary to the plain language of the statutes.

And so, the issue in this case is straightforward: does a decision granting TPS constitute a "lawful admission" and thereby reset the 180-day clock governing the exception described in § 1255(k)?

Two United States Courts of Appeals have interpreted the relevant statutes in a manner that supports the defendants' view. Two other Courts of Appeals have read the statutes as Bhujel does, as have a number of District Courts from other jurisdictions. Neither the First Circuit nor any other session of this Court has yet confronted the question. Having carefully considered the parties' briefs, the relevant statutes, and the decisions of the other federal courts that have construed § 1254a and § 1255 in similar (though not identical) contexts, this Court joins the chorus of federal courts that have interpreted § 1254a(f)(4) as "provid[ing] a pathway for [TPS holders] to obtain lawful permanent resident status pursuant to . . . § 1255." Flores, 718 F.3d at 550.[6]

---

[6] Though not fully quoted or paraphrased herein, the Court endorses and incorporates by reference the analysis articulated by the Sixth Circuit in Flores, as well as those courts to have considered the question in the wake of that decision and adopted the Sixth Circuit's view. See Ramirez v. Brown, 852 F.3d 954 (9th Cir. 2017); Melgar v. Barr, 379 F. Supp. 3d 783 (D. Minn. 2019); Sanchez v. Johnson, No. 16-651, 2018 WL 6427894 (D.N.J. Dec. 7, 2018); Leymis V. v. Whitaker, 355 F. Supp. 3d 779 (D. Minn. 2018); Figueroa v. Rodriguez, No. 16-8218, 2017 WL 3575284 (C.D. Cal. Aug. 10, 2017); Bonilla v. Johnson, 149 F. Supp. 3d 1135 (D. Minn. 2016); Medina v. Beers, 65 F. Supp. 3d 419 (E.D. Pa. 2014).

Bhujel's argument hinges on a provision of the TPS statute specifying that a TPS holder "for purposes of adjustment of status under section 1255 . . . shall be considered as being in, and maintaining lawful status as a nonimmigrant." § 1254a(f)(4). As the decisions upon which Bhujel relies have reasoned, the direct reference in § 1254a(f)(4) to § 1255 is "broadly written" with language that plainly confers upon TPS holders a benefit applicable "to § 1255, as a whole." Flores, 718 F.3d at 553; accord Medina, 65 F. Supp. 3d at 431-32. For the same reasons those courts have construed § 1254a(f)(4) as permitting TPS holders to satisfy the "inspected and admitted" and "admissible" requirements of § 1255(a), this Court reads its unbounded reference to § 1255 as plain language treating a TPS holder's last "lawful admission" for purposes of § 1255(k) as the date on which the noncitizen was granted TPS. See Ramirez, 852 F.3d at 962 (finding "general reference to § 1255" did not support restricting effect of § 1254a to particular subsections of § 1255); Leymis V., 355 F. Supp. 3d at 783 ("[M]ost other courts presented with this question have similarly concluded that a full and plain reading of the immigration laws requires courts to view a grant of TPS as . . . admission."); Medina, 65 F. Supp. 3d at 432 (reasoning that an unduly narrow interpretation of § 1254a(f)(4) would render it "essentially . . . meaningless").

The Court also finds it significant that § 1254a and § 1255 afford broad discretion to the Attorney General in granting TPS and LPR status, including permitting the waiver of many grounds that would otherwise render an individual ineligible for the relevant status. See § 1254(a)(1), (b)(1), (c)(2)(A) (Attorney General "may" grant TPS, designate countries, and waive certain grounds of inadmissibility); § 1255(a), (i), (j), (*l*), (m) (Attorney General "may . . . in his discretion" adjust certain noncitizens' status); Flores, 718 F.3d at 553-54 (discussing the contours of the Attorney General's discretion under the TPS statute). These explicit grants of

discretion, and the absence of any language suggesting Congress meant to limit such discretion under § 1255 in the case of TPS holders, confirms the conclusion that the plain text of § 1254a(f)(4) conveys Congress's intent that TPS holders, as a benefit flowing from a decision to grant them such status, have a pathway to LPR status irrespective of periods of unauthorized employment or immigration status predating their acquisition of TPS. Cf. Flores, 718 F.3d at 554 ("It is undisputed that a TPS beneficiary is a member of a class of people that Congress chose to protect due to an extraordinary circumstance.").[7]

The crux of the defendants' argument is their view that the INA defines the term "admission" in terms of physical entry into the United States and that it must always have the same meaning. However, as other courts—and even the Board of Immigration Appeals ("BIA")—understand, "[t]he immigration statutes use the words 'admitted' and 'admission' inconsistently." Roberts v. Holder, 745 F.3d 928, 932 (8th Cir. 2014); see id. at 933 (noting § 1255(b) treats adjustment of status to LPR as an "admission," and citing BIA decisions treating status adjustments as "a proxy for inspection and permission to enter at the border"); Medina, 65 F. Supp. 3d at 429-30 (same). As such, the Court concludes that the term "lawful admission" used in § 1255(k) must be considered in light of its context, and decisions the defendants cite interpreting the term "admission" in other immigration statutes do not dictate its construction

---

[7] As a practical matter, the Court notes that TPS can, and often does, last for many years, depending on the nature of the circumstances in the designated country and the rate at which they change. As a result, lawful TPS holders may be afforded protection from removal for a length of time that necessarily results in them establishing and maintaining lives as productive members of our society. The government's view of the relevant statutes would mean that such individuals never could seek LPR status, no matter how firm their ties and no matter how scrupulously they abide by the laws of this nation—immigration and otherwise. The Court finds that the language of § 1254a(f)(4) makes clear that Congress would not have intended such a result. Cf. Ramirez, 852 F.3d at 963-64 (noting the special status of TPS holders, even vis-à-vis noncitizens with other lawful statuses, and the "Rube Goldberg-like" scenario they would face if the defendants' view were adopted).

here.[8] E.g., Hanif v. Attorney Gen., 694 F.3d 479, 485 (3d Cir. 2012) (considering the meaning of "admission" in § 1182(h), a provision permitting waiver of inadmissibility and relief from removal for certain noncitizens with criminal convictions); see Medina, 65 F. Supp. 3d at 429 (distinguishing similar decisions on the same basis).[9] Where another subsection of § 1255 expressly uses the term "admission" to mean something other than physically entering the country, § 1255(b), the defendant's proposed interpretation is severely undermined. Medina, 65 F. Supp. 3d at 429-30. Rather, the language and intent of §§ 1254a and 1255 support treating the decision to grant TPS as the functional equivalent of a "lawful admission." Cf. Ramirez, 852 F.3d at 960 (listing similarities between "inspection and admission" and the process by which TPS is requested and evaluated).

Though the defendants correctly observe that Bhujel's lawful admission in 2003 distinguishes his case factually from Flores, Ramirez, and the other cases cited in footnote 7, supra, that difference does not justify construing the relevant statutes in a manner that would

---

[8] It appears USCIS also believes that context matters. For example, it has taken the view that the date of a noncitizen's status adjustment is the operative date of "admission" when it seeks to remove such a person pursuant to § 1227(a)(2)(A)(i), while also urging that the date of a noncitizen's status adjustment is not an "admission" when it opposes a noncitizen's request for cancellation of removal pursuant to § 1229b. Compare Abdelqadar v. Gonzales, 413 F.3d 668, 673 (7th Cir. 2005) (agency cited date of status adjustment to LPR, rather than earlier date of physical entry, in urging that a crime of moral turpitude had occurred "within five years" of admission and therefore justified removal under § 1227(a)(2)(A)(i)), with Chavez v. Holder, 587 F. App'x 43, 44 (4th Cir. 2014) (immigration judge and BIA held that neither grant of TPS nor adjustment to LPR were "admissions" of noncitizen seeking to avoid removal under § 1229b(a)). The Court notes that in Chavez, the noncitizen at issue had "entered the United States without inspection" and resided here for approximately three years without maintaining a lawful status before obtaining TPS, but she nevertheless was granted a status adjustment to LPR. 587 F. App'x at 43-44.

[9] It is certainly reasonable to assume that Congress's intent in drafting language providing for the removal of noncitizens who have committed crimes might have differed substantially from its intent in drafting language protecting a special class of noncitizens from removal and granting them enumerated benefits while they reside here.

render him ineligible for adjustment of status under § 1255.  Congress cannot have intended to provide a benefit to TPS holders who initially entered the country without inspection and authorization, while denying the same benefit to TPS holders who entered the country pursuant to a lawful visa but stayed without authorization after the visa expired.  Cf. Abdelqadar, 413 F.3d at 673 (discussing BIA decision construing "admission" in another statute in light of its context and asking, "why should illegal entrants enjoy rights superior to those of lawful immigrants?").

Finally, the Court acknowledges that the Fifth and Eleventh Circuits have reached a contrary result, limiting the term "admission" to the physical act of entry.  Melendez v. McAleenan, 928 F.3d 425 (5th Cir. 2019); Serrano v. U.S. Attorney Gen., 655 F.3d 1260 (11th Cir. 2011).  The relatively perfunctory decisions of those courts, however, are unpersuasive, especially considered alongside the thoughtful and comprehensive analysis of the statutory language found in the decisions of the Circuit and District Courts upon which Bhujel relies and with which this Court agrees.[10]

Because the Court finds that the plain language of the statutes unambiguously reflects Congress's intent that individuals in Bhujel's position be considered eligible for LPR status under § 1255, it need not engage in an assessment of whether and how much deference to accord the agency interpretations of the statutes identified by the defendants.[11]

---

[10] The Eighth Circuit is presently considering the question of how § 1254a and § 1255 interact, as the agency has appealed one of the several cases that have originated in the District of Minnesota and resulted in trial court decisions in favor of the TPS-holding, LPR-status-seeking plaintiffs.  Melgar v. Barr, 379 F. Supp. 3d 783 (D. Minn. 2019), argued, 19-2130 (8th Cir. Feb. 13, 2020).  The issue is also pending before the Third Circuit, where the agency has appealed a case originating in the District of New Jersey that also yielded a trial court decision favoring the plaintiff.  Sanchez v. Johnson, No. 16-651, 2018 WL 6427894, *1 (D.N.J. Dec. 7, 2018), argued 19-1311 (3d Cir. Jan. 15, 2020).

[11] The Court notes, however, that other courts have persuasively reasoned that the cited agency decisions and policy statements would not be entitled to deference in any event.  E.g., Ramirez, 852 F.3d at 958-59; Flores, 718 F.3d at 555.

In sum, the defendants' decisions denying Bhujel's LPR applications based on a finding that he is ineligible for adjustment of status were arbitrary and capricious, as they arose from misinterpretations of the clear and controlling statutory language.  Bhujel is therefore entitled to summary judgment on his APA claim, the agency's decisions are reversed, and the matter will be remanded to the agency for further review of Bhujel's applications in light of this Court's explanation of the governing legal standards.[12]

B.     Mandamus Claim

The defendants seek dismissal of Bhujel's mandamus claim under Rule 12(b)(6), urging that Bhujel cannot establish the requisite absence of other adequate means of obtaining the relief he seeks.  See Doc. No. 12 at 8 (reciting standard for mandamus relief set forth in Hollingsworth v. Perry, 558 U.S. 183, 190 (2010)).  Bhujel's only response to this point is a summary assertion that "mandamus action is required to rectify the error" where the defendants "have consistently denied [his] adjustment of status applications."  Doc. No. 17 at 7.

"The general principle which governs proceedings by mandamus is, that whatever can be done without the employment of that extraordinary remedy, may not be done with it.  It lies only when there is practically no other remedy."  Ex parte Rowland, 104 U.S. 604, 617 (1881); accord Helstoski v. Meanor, 442 U.S. 500, 505 (1979).  In this case, as explained in the preceding discussion, the APA provides Bhujel an adequate remedy for the defendants' arbitrary and

---

[12] The Court's finding that Bhujel is eligible for adjustment of status based on § 1255(k), given the grant of TPS and his subsequent compliance with that program and the immigration laws, does not require the defendants to grant Bhujel's application for a status adjustment.  What is required is that the Attorney General (or the agency or person to whom he has delegated authority for these purposes) consider Bhujel's application on its merits and exercise their discretion in a manner that is not arbitrary or capricious.

14

capricious denial of his requests for LPR status.  As such, Bhujel has not stated a plausible claim for mandamus relief.  Count One of his Complaint is DISMISSED.

IV.     <u>CONCLUSION</u>

Accordingly, the defendants' motion to dismiss and for summary judgment (Doc. No. 11) is ALLOWED in part and DENIED in part, and Bhujel's motion for summary judgment (Doc. No. 16) is ALLOWED in part and DENIED in part.  In particular, as to Bhujel's mandamus claim (Count One in his Complaint, Doc. No. 1 ¶¶ 29-39), the defendants' motion is ALLOWED, Bhujel's motion is DENIED, and Count One is DISMISSED.  As to Bhujel's APA claim (Count Two in his Complaint, Doc. No. 1 ¶¶ 40-47), the defendants' motion is DENIED, Bhujel's motion is ALLOWED, and the matter is REMANDED to the agency for further proceedings consistent with this Order.

SO ORDERED.

 /s/ Leo T. Sorokin                
United States District Judge